IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


TEDDY STANLEY,

                    Plaintiff,

        vs.                                    Civil Action 2:08-CV-880
                                               Judge Frost
                                               Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                    Defendant.



## REPORT AND RECOMMENDATION

        This is an action instituted under the provisions of 42 U.S.C.
§405(g) for review of a final decision of the Commissioner of Social
Security denying plaintiff's application for a period of disability and
disability insurance benefits.  This matter is now before the Court on
the plaintiff's *Statement of Errors* and the Commissioner's *Memorandum in
Opposition.*

        Plaintiff Teddy Stanley was 51 years of age at the time of the
administrative decision.    He filed an application for disability
insurance benefits in November 2003, alleging that he has been disabled
since December 2002.    The application was denied initially and upon
reconsideration, and plaintiff requested a *de novo* hearing before an
administrative law judge.

        On May 24, 2007, plaintiff, represented by counsel, appeared
and testified at the administrative hearing, as did David Garling, M.D.,
who testified as a medical expert, and Lynne Kaufman, who testified as
a vocational expert.    In a decision dated July 2, 2007, the
administrative law judge found that plaintiff suffers a severe back

impairment consisting of degenerative disc disease of the lumbar spine at the L3-S1 levels, status post laminectomy and discectomy at the L3-L4, L4-5 and L5-S1 levels with pedicular instrumentation from L3-S1, as well as obesity and degenerative joint disease of the right ankle. The administrative law judge found that plaintiff does not suffer a severe mental impairment. The administrative law judge also found that plaintiff's impairments, whether considered singly or in combination, neither meet nor equal any listed impairment. Relying on the testimony of the medical expert, the administrative law judge found that plaintiff has the residual functional capacity to perform a limited range of light exertion and, relying on the testimony of the vocational expert, that plaintiff's residual functional capacity would allow him to perform work that exists in significant numbers in the economy. The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 22, 2008.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d

383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff suffered a work-related back injury and, in December 2002, he underwent a laminectomy and discectomy of L3-4, L4-5 and L5-S1 and a fusion with pedicular instrumentation from L3-S1. *A.R.* 199. W. Scott Bolz, M.D., plaintiff's treating orthopedic surgeon, opined in August 2003 that plaintiff had a permanent partial disability in the 50 percent to 60 percent range. *A.R.* 199. Although Dr. Bolz characterized plaintiff's recovery as "satisfactory," this treating orthopedic surgeon also noted that, despite surgery, "plaintiff never developed the functional capacity sufficient to do even light work." *Id.*

In December 2003, Dr. Bolz rated plaintiff as "temporarily totally disabled" since October 2003 as a result of an incident during which plaintiff "felt a pop in his back." *A.R.* 195.

Dr. Bolz's office notes reflect continuing complaints of pain and prescriptions for narcotic pain medication. *See, e.g., A.R.* 190, 192. X-rays indicate that the fusion is solid, *see id.,* and a myelogram/CT scan and MRI "proved to be unremarkable in terms of localizing and etiology for his pain." *A.R.* 184. *See A.R.* 206-09. Dr. Bolz also noted that plaintiff has no radiculopathy or neurological deficit. *Id.*

In January 2004, Maureen C. Gallagher, D.O., performed a

consultative evaluation at the request of the state agency. On physical examination, Dr. Gallagher reported a flattening of the lower lumbar lordosis and complaints of pain radiating into the right leg. She also noted minimal weakness in the shoulders and right flexor and extensors of the hip. *A.R.* 143. There was no muscle atrophy or motor weakness of the hip flexors or shoulders. However, Dr. Gallagher did note "chronic atrophic changes" of the paraspinal musculature extending through the lumbar region. There were no sensory changes; however, deep tendon reflexes were diminished throughout and ankle jerks could not be elicited. *A.R.* 143. Although plaintiff could change position, he began to experience fatigue in the back after approximately 25 minutes in an unsupported seated position. She diagnosed degenerative disc disease of the back, status post laminectomy, discectomy and fusion at L3-S1. *A.R.* 143. According to Dr. Gallagher, plaintiff could lift 35 pounds occasionally but could not carry that amount repeatedly.

A state agency physician reviewed the record in January 2004 and opined that plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. He could stand or walk about 6 hours and sit for about 6 hours throughout an 8-hour workday. His ability to push or pull was unlimited. *A.R.* 174.

At a June 2004 examination by Dr. Bolz, plaintiff's spine was markedly stiffened and range of motion was extremely minimal, although his neurological status remained "grossly intact." *A.R.* 188. Dr. Bolz recommended epidural steroid injections for pain control. *A.R.* 184. Dr. Bolz opined that plaintiff "is permanently and totally disabled and cannot be employed in any capacity whatsoever at present and for the foreseeable future." *Id.*

In September 2004, plaintiff presented to an emergency room for exacerbation of chronic low back pain. On physical examination there

was minimal low back tenderness, normal strength but depressed reflexes. *A.R.* 178. Plaintiff was given narcotic pain medication.

Jeffrey R. Blood, M.D., a rehabilitation specialist to whom plaintiff was referred for lumbar epidural steroid injections, reported in April 2005 that, on clinical examination, plaintiff had normal sensation in the lower limbs, although his reflexes were decreased. Manual muscle testing showed no evidence of weakness. Straight leg raising was positive bilaterally from a seated position at 70 degrees and, from a supine position, at 40 degrees on the right and at 60 degrees on the left. *A.R.* 204. Range of motion of the lumbar spine was markedly diminished. Dr. Blood commented that there was a significant amount of soft tissue component to plaintiff's lower back pain. Dr. Blood expressly commented that plaintiff "appears to have lumbar radiculopathy, more pronounced on the right," *A.R.* 204, although Dr. Blood referred to no diagnostic testing to support this finding of radiculopathy. The epidural steroid injections were not helpful in alleviating plaintiff's pain. *See A.R.* 217.

In May 2006, Dr. Bolz completed a physical capacity evaluation in which he opined that plaintiff was limited to no more than 1 hour of standing and walking, for no more than 15 minutes at a time, and to no more than 1 hour of sitting, for no more than 30 minutes at a time. *A.R.* 205. Plaintiff could lift no more than 5 pounds frequently and no more than 10 pounds occasionally. Plaintiff was extremely limited in his ability to push and pull and bend, and was markedly limited in his ability to reach and engage in repetitive foot movements. *Id.* According to Dr. Bolz, plaintiff was "unemployable." *Id.*

Dr. Bolz indicated in September 2006 that plaintiff's pain was "episodic and not constant." *A.R.* 225. Indeed, the doctor's office notes suggest temporary improvement, *see, e.g., A.R.* 214, 197, followed

by renewed complaints of pain.  *See, e.g., A.R.* 215.  Dr. Bolz prescribed a TENS unit.  *A.R.* 228.

In June 2005, plaintiff underwent a vocational assessment by William T. Cody, who opined that plaintiff is permanently and totally disabled and, further, that there are no jobs in the local or national economy that he is able to perform.  *A.R.* 121.  In reaching this conclusion, the vocational expert noted Dr. Bolz's opinion of total disability and also referred to a report by one Robin Stanko, M.D., identified as a "physical medicine specialist," *A.R.* 118, who apparently suggested a residual functional capacity for "restricted, sedentary, work," *A.R.* 120, so long as plaintiff could change positions frequently.  According to the vocational expert, the need to change positions frequently "would impact on productivity which would fall below competitive standards."  *A.R.* 121.

At the administrative hearing, plaintiff complained of sharp, shooting pain in his lower back radiating down his legs and sometimes extending up the back.  *A.R.* 274.  He has occasional numbness in the right leg.  *A.R.* 274.  Plaintiff also complained of problems with his ankle.  His back surgery did not alleviate his pain and, since surgery, "actually, I feel less able to do things. ... [N]ow I can't do nothing." *A.R.* 276.  The TENS unit helps alleviate the pain.  He uses a cane occasionally.  Plaintiff denied negative side effects from his narcotic pain medication.  *A.R.* 283.

Plaintiff estimated that he can stand and walk for no more than 2 hours throughout an 8-hour workday, *A.R.* 287, and would need a break after about 15 minutes.  He can sit for a total of 1½ hours, but would have to get up and move around after 30 minutes.  *A.R.* 288.  He can neither bend over nor reach overhead.  *A.R.* 290.  He estimates that he can lift and carry 15 pounds.  *Id.*  He mows his small yard but must take

a break every 10 minutes.  *A.R.* 292.

    The medical expert testified that the record documented degenerative disc disease and status post laminectomy from L3 to S1 and a fusion from L3 to S1 and a discectomy at L4-5 on the right, *A.R.* 298, a midline herniation at L5-S1, *A.R.* 299, and a diagnosis of degenerative joint disease of the right ankle.  *Id.*  None of plaintiff's impairments either meet or equal any listing, however.  *A.R.* 302.  According to Dr. Garling, plaintiff could lift up to 40 pounds occasionally and up to 20 pounds frequently.  He could not bend more than 40-50 degrees, and then only occasionally, and would have difficulty kneeling or squatting because of the fusion.  *Id.*  He should not climb ladders nor should he work with dangerous machinery because of pain medication.  *Id.*  He should be permitted to arise from a seated position for a very brief period of time.  He has no limitations in his ability to walk and stand because of his back condition.  *A.R.* 303.  He could walk 1 flight of stairs occasionally.  *A.R.* 304.  Although plaintiff's symptoms suggested a radiculopathy, Dr. Garling noted that there was no objective finding to support that finding.  *A.R.* 304-05.  Plaintiff's obesity would preclude work in temperature extremes.  *A.R.* 306.

    The administrative law judge asked the vocational expert to assume a claimant with plaintiff's vocational profile and the limitations identified by Dr. Garling, the medical expert.  In response, the vocational expert testified that such a claimant could not perform plaintiff's prior work but could perform about 35 percent of light jobs including such jobs as small product assembler, cashier and mail sorter, and about 60 percent of sedentary jobs, including such jobs as assembler and sedentary sorter/packer and unskilled clerical jobs.  *A.R.* 310. Assuming, too, that the claimant is required to briefly stand and stretch after 30-45 minutes of sitting, such a claimant could perform 40 percent

of sedentary employment. Assuming Dr. Bolz's restrictions, a claimant could not perform any of the work identified by the vocational expert. *A.R.* 313. The vocational expert construed Mr. Cody's vocational evaluation, which concluded that plaintiff cannot work, *A.R.* 315, as being based on a combination of physical limitations and pain.

In his decision, the administrative law judge rejected the opinions of disability by reason of pain articulated by Dr. Bolz as unsupported by diagnostic testing, and as inconsistent with the objective medical evidence of record and the claimant's own testimony. He also noted that Dr. Bolz did not recommend additional surgery. *A.R.* 35. The administrative law judge also noted that Dr. Bolz's office notes indicated a gradual improvement of plaintiff's symptoms with treatment. "The fact that there has not been any further testing since the MRI of March 2005, suggests that the narcotic pain relievers are controlling the claimant's symptoms." *A.R.* 35. The administrative law judge accorded "some weight" to the opinion of Dr. Gallagher, the consultative examining physician, who opined that plaintiff is able to lift 35 pounds. He rejected Dr. Blood's opinion because his diagnosis of lumbar radiculopathy was not supported by objective medical evidence. *A.R.* 36.

The administrative law judge also rejected the opinion of disability articulated by the consultative vocational expert, Mr. Cody, because, "there were medical records used by Mr. Cody when he formulated his opinion that are not contained in the medical evidence of record in this case." *A.R.* 36. Moreover, his assessment of disability was, in the view of the administrative law judge, inconsistent with the medical evidence as a whole.

Considering plaintiff's credibility and subjective complaints, the administrative law judge found that, although plaintiff's impairments could reasonably be expected to produce the alleged symptoms, the

8

plaintiff's statements about the intensity, persistence and limiting effects of those symptoms were overstated and not entirely credible. *A.R.* 39.[1]

In his *Statement of Errors,* plaintiff contends that the administrative law judge erred in determining plaintiff's vocational background,[2] in finding that plaintiff does not suffer a severe mental impairment, in rejecting the opinions expressed by plaintiff's treating orthopedic surgeon, Dr. Bolz, and instead relying on the opinion of the non-examining medical expert, Dr. Garling, and in assessing plaintiff's credibility. Plaintiff also asks that the matter be remanded for consideration of additional evidence. *See* Sentence 6, 42 U.S.C. §405(g). This Court concludes that, because the administrative law judge did not properly evaluate Dr. Bolz's opinions, the action should be remanded to the Commissioner. The Court will therefore not consider the remaining issues raised by plaintiff.

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(d)(2). If the administrative law judge finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The

---

[1]In assessing plaintiff's credibility, the administrative law judge noted that plaintiff did not ask to stand during the administrative hearing, which lasted more than an hour. *A.R.* 39. To the contrary, the Court notes that, during the course of the medical expert's testimony, plaintiff asked for and was granted permission to stand. *A.R.* 305.

[2]The administrative law judge found that plaintiff has at least a high school education. *A.R.* 41. The evidence indicates that plaintiff has a ninth grade education but obtained his GED. Testing indicated that he performed certain academic functions at the fourth grade level. *A.R.* 118-122.

length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §404.1527(d)(2),(4).

The administrative law judge found that the residual functional capacity assessment articulated by Dr. Bolz is inconsistent with the objective medical evidence of record. However, Dr. Blood, a treating specialist in physical medicine and rehabilitation, clearly credited plaintiff's subjective complaints of pain, and Mr. Cody, the examining vocational expert, agreed that plaintiff's reduced physical capacity, which was further reduced by pain, rendered him disabled.[3] The fact that plaintiff's pain, which has been credited by all his treating and examining physicians, has not been documented by objective testing is not a sufficient basis in which to conclude that Dr. Bolz's opinions are inconsistent with the medical record.[4]

In rejecting Dr. Bolz's opinions and assessment, the administrative law judge also noted that at least one progress note indicated that plaintiff's "pain was much better." *A.R.* 35, citing *A.R.*

---

[3]The Court notes that the administrative law judge did not expressly ask the medical expert to take plaintiff's pain into account assessing plaintiff's residual functional capacity.

[4]The Court is concerned, as well, by the administrative law judge's wholesale rejection of Mr. Cody's vocational support merely because the Stanko report, referred to and relied upon by Mr. Cody, was not included in the administrative record. *See A.R.* 36. It is unclear why, if the administrative law judge regarded the Stanko report as critical, he did not ask the plaintiff to obtain that report, as he suggested or contemplated with respect to plaintiff's alleged ankle impairment. *See A.R.* 300 (inquiry as to other records relating to plaintiff's workers' compensation claim).

215. However, as this Court previously noted, over the course of the years during which Dr. Bolz has treated plaintiff's pain Dr. Bolz has made a number of such observations. However, those temporary improvements are inevitably followed by renewed complaints of pain by plaintiff and consistent treatment with narcotic pain medication.

In short, the Court concludes that the administrative law judge failed to properly evaluate the opinions of plaintiff's treating orthopedic surgeon. The matter must therefore be remanded for further proceedings.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that the matter be **REMANDED** for further proceedings.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,*

638 F.2d 947 (6th Cir. 1981).


August 18, 2009                          *s/Norah McCann King*
                                        Norah McCann King
                              United States Magistrate Judge